No. A-CV-31-81
A-CV-18-81

COURT OF APPEALS OF THE NAVAJO NATION

March 31, 1982

Dick WILSON, Appellant.

vs.

Lillian WILSON, Appellee

ORDER DENYING APPEAL

Frankie Howard, Esq., DNA-People's Legal Services, Tuba City, Navajo Nation (Arizona) for appellant and Richard George, Esq., George Law Firm, Tuba City, Navajo Nation (Arizona) for appellee.

This order is entered under 7 NTC Sec. 801. That statute gives the Chief Justice or, in this case, the Acting Chief Justice the authority to deny an appeal unless there is probable cause to review the Trial Court decision.

JURISDICTION

In this cause a default judgment of divorce was entered on January 2, 1981. On March 18, 1981 the appellant-defendant filed a "writ of Mandamus" with the Court of Appeals, and on July 27, 1981 a notice of appeal was filed. Those documents request a trial de novo under Rules 5 and 16 of the Rules of Appellate Procedure. The appellant does not understand how the Court of Appeals functions under our statutes and court rules. 7 NTC Sec. 302 gives this court jurisdiction to hear appeals from final judgments and orders of the Trial Court. There must be a request for permission to appeal from such a judgment or order within thirty days of the date of its entry. 7 NTC Sec. 801(a). Aside from appeals this court has jurisdiction to hear cases where 1) a special writ or order is necessary or proper to carry out its jurisdiction, 2) the Trial Court is acting beyond its jurisdiction, or 3) the Trial Court fails or refuses to act within its jurisdiction. 7 NTC Sec. 393. Rule 16 of the Rules of Appellate Procedure implements the last section by providing for the procedures of mandamus, prohibition and other special remedies.

The procedure of mandamus is designed to remedy a failure of the Trial Court to act, as provided for in 7 NTC Sec. 303. This party seeks a new trial before the Court of Appeals, and that is a remedy only on appeal. 7 NTC Sec. 801. Since this is clearly an appeal and since the appeal papers were not filed in the time provided by the

statute and our rules, this court does not have jurisdiction over this matter and the appeal must be denied.

## INTEMPERATE LANGUAGE IN COURT PAPERS

The so-called writ of mandamus in this case accuses the Trial Court of a "preconceived prejudice" and charges it with "obstructing justice." The combined motion to dismiss and answer in the Trial Court includes statements such as: "How can the court approve a validation of marriage when the common-law marriage was never been resolved between the two parties? . . . That the Plaintiff took approximately 500 herds of sheep, horses and cattle and other material things from the Defendant in the year of 1961. What more does she want?. . . That this is only a harassment against Defendant in a bias matter."

This case presents the Court of Appeals with a duty to give guidance to practitioners before the Navajo court system and to admonish all counsel on the kinds of language which will not be permitted in pleadings and briefs.

It has long been held by courts of appeal that improper language will be a ground for striking an appellate brief. "Effect of improper language in briefs of counsel," 59 L.Ed. 1090 (1915). In the 1914 case of Royal Arcanum v. Green the Supreme Court struck a brief for "vituperative, unwarranted, and impertinent expressions as to opposing counsel." 237 U.S. 531, 546; 59 L.Ed. 1089, 1102 (1914). In the case of Washington Post Co. v. Chaloner the court found a pleading with "much irrelevant and scandalous matter . . . unfit for our files," and struck it. 250 U.S. 290, 294; 63 L.Ed. 987, 989 (1919). In Cox v. Wood, upholding the constitutionality of the draft, the government made a motion to strike the appellant's brief for impertinent and scandalous passages. The court held:

> "Considering the passages referred to, and making every allowance for intensity of zeal and an extreme of ernestness on the part of counsel, we are nevertheless constrained to the conclusion that the passages justify the terms of censure by which they are characterized in the suggestion made by the government. But, despite this conclusion, which we regretfully reach, we see no useful purpose to be subserved by granting the motion to strike. On the contrary, we think the passages on their face are so obviously intemperate and so patently unwarranted that if, as a result of permitting the passages to remain on the files, they should come under future observation, they would but serve to indicate to what intemperance of statement an absence of self-restraint or forgetfulness of decorum will lead, and therefore admonish of the duty to be sedulous to obey and respect the limitations which an adhesion to them must exact." 247 U.S. 3, 6-7; 62 L.Ed. 947, 950 (1917).

There is no place for charged language in any pleading or brief presented to a Navajo court. The personal opinions of counsel about the ruling of a court must be kept to himself or herself if the integrity of the courts is to be maintained. We have the remedy of an appeal to correct errors or injustices in the Trial Courts, and counsel must confine their appeal papers to identifying or highlighting those matters so they may be corrected. It is completely improper to us insulting adjectives, accusations or other improper language in a pleading or brief, and it is wholly improper to use rhetorical or argumentative language in a pleading. Argument should be confined to briefs and it should be proper.

Therefore this court will follow the example of the Cox v. Wood case and the language recited above will not be stricken. However it will stand as an example of the kind of intemperate language this court will not tolerate.

Because this court does not have jurisdiction in this appeal, permission to appeal is hereby DENIED and the appeal is DISMISSED.